# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JAMAR JENKINS,<br><br>Defendant. | Case No. CR11-2015<br><br>ORDER FOR PRETRIAL DETENTION |

On the 28th day of February, 2011, this matter came on for hearing on the Government's request to have the Defendant detained prior to trial. The Government was represented by Assistant United States Attorney Robert L. Teig. The Defendant appeared personally and was represented by his attorney, James Bryson Clements.

## RELEVANT FACTS

On February 15, 2011, Defendant Jamar Jenkins was charged by Indictment (docket number 2) with being a felon in possession of a firearm. Defendant entered a plea of not guilty and trial is scheduled before Chief Judge Linda R. Reade on April 25, 2011.

Waterloo Police Investigator Erin Hageman testified regarding the circumstances underlying the instant charge. On August 5, 2010, at 1:20 a.m., Waterloo police officers conducted a traffic stop on a vehicle being driven by Defendant. During the stop, Defendant appeared to be nervous. He was fumbling with the glove box and stuff on his lap. He also had sweat "rolling down his face." Defendant was unable to produce proof of insurance for his vehicle.

The police officers asked for consent to search the vehicle. Defendant gave his consent to the search. Defendant had a passenger in the car. Defendant and the passenger

1

exited the vehicle. Defendant and the passenger were both patted down by the police officers.

While searching the vehicle, police officers saw, from the front area of the driver's seat, a bag underneath the seat. In order to retrieve the bag, officers reached around to the back of the driver's seat, and removed the bag from underneath the seat. A handgun was found inside the bag.

Defendant and the passenger were placed in handcuffs. Defendant claimed that the gun was not his, and belonged to the passenger. Defendant also stated that the passenger placed the gun under the seat. The passenger, on the other hand, claimed that the gun belonged to the Defendant.

According to the pretrial services report, Defendant is 32 years old. He is single and has never been married. He has six children, however, from five different women. All of his children reside with their respective mothers in Iowa and Illinois. Defendant owes approximately $60,000 in back child support. Defendant has lived most of his life in Waterloo, Iowa. From 1995 to 2000, Defendant lived in Des Moines, Iowa.

Defendant is currently employed by a staffing agency, and is placed at Crystal Distribution Services in Cedar Falls, Iowa. He started working at Crystal Distribution Services about two and one-half months ago. In 2008, Defendant worked at Kaiser Contract Cleaners in Waterloo, for about four months. Defendant also stated that he works independently as a music producer.

Defendant is in good physical health. He has no past or present mental health or emotional concerns. Defendant reported using marijuana "infrequently" from his mid-teens until about three weeks before his arrest on the instant charge.

On August 1 1997, Defendant was charged and later convicted of possession of marijuana. On October 20, 2007, Defendant was charged and later convicted of assault with intent to inflict serious injury and possession of drug paraphernalia. On the assault charge, Defendant was sentenced to 2 years in prison, which was suspended. He was also given 2 years probation. On June 10, 1998, Defendant was found in violation of

probation. On July 1, 1998, he was found in contempt of court. His probation was discharged on August 2, 2001.

On January 3, 2000, while on probation for the 1997 assault charge, Defendant was charged and later convicted of fifth degree theft. On August 10, 2000, also while on probation for the assault charge, Defendant was charged and later convicted with domestic abuse assault without intent to cause bodily injury. He was given 1 year probation. His probation was discharged on April 2, 2003.

On September 4, 2002, while on probation for the 2000 domestic abuse assault charge, Defendant was charged and later convicted of fourth degree theft. On October 6, 2002, while on probation for the domestic abuse assault charge, and while on bond release for the theft charge, Defendant was charged and later convicted of consumption/intoxication and interference with official acts causing bodily injury. On January 6, 2003, Defendant was sentenced on the September and October charges. Defendant was given 1 year probation. On June 2, 2003, Defendant absconded from supervision, and an arrest warrant was issued. On July 13, 2004, apparently while being served with the arrest warrant for absconding from supervision, Defendant was charged and later convicted of harassment of a public officer or employee. On September 22, 2004, Defendant was ordered to serve 180 days in jail and his probation was terminated.

On January 29, 2006, Defendant was charged and later convicted of theft by lottery ticket fraud. Defendant was sentenced to 5 years in prison, which was suspended. Defendant was given 2 to 5 years probation. On October 10, 2007, Defendant absconded from supervision, and an arrest warrant was issued. The arrest warrant was served on November 9, 2007. On January 17, 2008, Defendant absconded from supervision a second time. A warrant for his arrest was issued, and later served on February 22, 2008. On May 23, 2008, Defendant was found in violation of his probation and ordered to live in a residential facility for 1 year. On December 1, 2008, Defendant absconded from supervision a third time. An arrest warrant was issued, and later served on February 5, 2009. On February 20, 2009, Defendant's probation was revoked, and he was sentenced

to 5 years in prison. Defendant was paroled on December 1, 2009. His parole was discharged on September 13, 2010.

While on probation for the lottery fraud charge, Defendant: (1) failed to report for at least 12 scheduled visits with his probation officer; (2) admitted smoking marijuana on two occasions; (3) on multiple occasions signed out from the residential facility indicating that he was going to work, but failed to actually show up for work; (4) failed to maintain contact with his probation officer; and (5) failed to check in with the day reporting program on at least 13 different occasions. Additionally, when the first arrest warrant for absconding was served on Defendant, he was charged and later convicted of harassment of a public officer or employee.

At the time of the instant charge, Defendant was on parole for the lottery fraud charge.

## DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). It must first determine by a preponderance of the evidence whether defendant has been charged with a certain type of offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the court then determines whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

In seven enumerated circumstances, a judicial officer must hold a hearing to determine whether any release condition or combination of release conditions will

4

reasonably assure the appearance of defendant as required and the safety of the community. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of violence, serious drug offenses, and felonies involving minor victims. 18 U.S.C. § 3142(f)(1). The last two enumerated circumstances where a hearing is required involve "risk factors." 18 U.S.C. § 3142(f)(2). In this case, Defendant is charged with being a felon in possession of a firearm, one of the offenses found in § 3142(f)(1). Also, the Government alleges a serious risk of flight.

If, following a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e). A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985). "Perhaps counter-intuitively, the government's evidentiary burden is lesser to prove a flight risk than to prove risk of harm." *United States v. Kisling*, 334 F.3d 734, 735, n.3 (8th Cir. 2003) (citing *Orta*).

In determining whether any condition of combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger

to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

Turning to the facts in the instant action, Defendant is charged with being a felon in possession of a firearm. The weight of the evidence against Defendant is fairly strong. It is undisputed that Defendant is a convicted felon. During a traffic stop, police officers searched Defendant's vehicle and found a bag containing a gun under the driver's seat. Defendant claimed that the gun belonged to a passenger in the vehicle, and stated that the passenger placed the bag containing the gun under the driver's seat. The passenger, however, claimed that the gun belonged to Defendant. Regardless of who owned the gun, a jury could conclude that Defendant was in constructive possession of the gun.

Defendant has a history of violent offenses, including assault, domestic abuse assault, interference with official acts causing bodily injury, and harassment of a public officer or employee. Defendant also has a substantial history of violating probation, parole, and pretrial release. In particular, Defendant has: (1) failed to report for scheduled visits with his probation officer on multiple occasions; (2) admitted smoking marijuana while on probation; (3) signed out from a residential facility indicating that he was going to work, but then failed to show up for work on multiple occasions; (4) shown a propensity for failing to maintain contact with his probation officer; (5) failed to check in with a day reporting program on multiple occasions; and (6) repeatedly committed additional offenses while on pretrial release, probation, and parole. More significantly, Defendant absconded from supervision in 2002 while on probation for his fourth degree theft and interference with official acts causing bodily injury convictions. Defendant also absconded from supervision in 2007 and 2008, on three separate occasions, while on probation for his lottery fraud conviction. The Court has no confidence that Defendant would comply with any terms or conditions of pretrial release.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds the Government has met its burden of proving by a preponderance of the evidence that no condition or combination of conditions

will reasonably assure the appearance of Defendant as required. The Court further finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained prior to trial. Defendant was advised in open court of his right to file a motion with the District Court for revocation or amendment of this Order.

**ORDER**

IT IS THEREFORE ORDERED as follows:

1. The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2. The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

3. On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

4. The time from the Government's oral motion to detain (February 23, 2011) to the filing of this Ruling (March 1, 2011) shall be excluded in computing the time within which the trial must commence pursuant to the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(D).

DATED this 1st day of March, 2011.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA